GLADNEY, Judge.
Falcon Flying Services, Inc., plaintiff and appellee herein, having sustained damage to. an aircraft under a contract of insurance, brought this suit against five defendants: Raymond Roy, Cody Beasley, President of Tri-State General Agency, Inc., Mid-Continent Underwriters, Inc., Peter J. .Mc-Breen and Associates, and Bill McKamey. In other pleadings Owen John Lewis was named as a party defendant in lieu of Underwriters at Lloyd’s of London. Judgment was rendered in favor of plaintiff against the defendants, Roy, Tri-State Agency, Inc., Mid-Continent Underwriters, Inc. and Owen John Lewis, in solido, for the amount of damages sustained by plaintiff’s aircraft; for a penalty of 25% plus attorney’s fees of $2,000 against Mid-Continent and Lewis; in favor of Roy and Tri-State on their third party claims against Mid-Continent, dismissing plaintiff’s demands and all third party claims against defendants, McKamey and McBreen; the third party claims of McKamey and McBreen; Mid-Continent *404 third party damages against Lewis, Roy, Beasley, Tri-State, McKamey and Mc-Breen, The appellants before this court are Roy, Tri-State, and Mid-Continent. Before this court in “A motion to Correct Minutes Entries” it was disclosed that Owen John Lewis had been voluntarily dismissed from the action by plaintiff’s counsel and this court entered an order dismissing plaintiff’s demands against Lewis. Falcon has filed its answer to the appeals perfected and prays that the judgment be affirmed after being amended to increase statutory attorney’s fees.
In November or December of 1963 Raymond Roy, an insurance agent, was approached by Sergeant Neil Long to obtain some insurance for two planes owned by Falcon Flying Services, Inc. The latter, a corporation was made up of individuals who wanted to continue flying several planes after the breakup of their flying club. Sergeant Long asked Roy if he could obtain liability and hull insurance on a Cessna 172 and a Mooney Mark aircraft. Long said that he wanted “limited commercial” insurance since this is the type of insurance he formerly had on these planes. He also gave Roy some information concerning the uses of the plane and the number of pilot hours which the pilots in the club had. Roy advised Long he didn’t write aviation insurance bitt thought he could get it. Roy then contacted Cody Beasley, of the Tri-State General Agency in Shreveport. Beasley represented various insurance companies all authorized to do business in the state of Louisiana. However, none of these companies handled aviation insurance. Beasley explained that there was an alternative, in that insurance coverage could be obtained through surplus line insurance companies, companies not authorized to do business in the state. In the follow up Beasley contacted Harry Hirsch, Vice President of Mid-Continent Underwriters, Inc., a surplus line brokerage firm in New Orleans. On December 9, 1963 he called Hirsch giving him the placing information which Roy had given to him. He asked Hirsch to get a quotation on a price for this insurance coverage. On the same day Hirsch sent a cable to J. H. Minet and Company, brokers for Underwriters at Lloyd’s of London, a known surplus line insurance company. The following day J. H. Minet and Company cabled back giving a quotation. On December 11 Hirsch transmitted this quotation to Beasley. Beasley transmitted the information to Roy who gave it to Sergeant Long.
On December 16, 1963, Falcon Flying Services, Inc. decided to purchase the insurance coverage for the quoted price and contacted Beasley who called Mid-Continent Underwriters and spoke to Leonard G. Tubbs, Jr. requesting the coverage. Tubbs cabled J. H. Minet and Company in London requesting the coverage. On the following day December 17, a cable confirming the binding of the risk was received by Mid-Continent Underwriters, Inc. On December 19 Hirsch informed Beasley of the coverage and also again cabled J. H. Minet and Company requesting that they have the Underwriters at Lloyd’s of London advise what policy form to attach to the Certificate of Insurance which Mid-Continent would issue as evidence of the coverage. J. H. Minet and Company wired back that Mid-Continent should attach to its Certificate “Lloyd’s Hull Aircraft Policy AV 16.” At no time did J. H. Minet and Company advise, indicate or demand that any restrictions, or exclusions other than the ones already in the form AV 16 be inserted by Mid-Continent. On December 26, 1963 a document entitled “Certificate of Insurance Effected Through Mid-Continent Underwriters, Inc.” and being numbered 23269 with a copy of Lloyd’s Aircraft Policy form AV 16 attached thereto was sent to the TriState General Agency for forwarding to Falcon Flying Services, Inc. The insurance was effective as of the day of binding, December 16, 1963. On January 7, 1964 coverage was cancelled at the request of Beasley because of an apparent liability to raise the premium. Subsequently, the premium was raised and coverage was reinstated.
*405 On March 10, 1964, an accident occurred at Lucien Field at which time the Cessna Aircraft was damaged to the extent of $3,286.48. At the time Captain Preston Bradshaw was piloting the plane with three passengers. He had had approximately 160 pilot hours at the time. Mid-Continent was notified of the accident. They notified the .adjusting firm of Topless and Harding, the usual adjustors for Underwriters at Lloyd’s of London. Topless and Harding hired Charles England of the Bossier Adjustment Bureau to investigate the accident. Later, Mid-Continent Underwriters, Inc. was contacted by J. H. Minet and Company, who directed them to take Topless and Iiarding off the case and put on Peter J. McBreen and Associates as the adjusting firm. This was done and Bill McKamey, a New Orleans representative of Peter J. McBreen .and Associates, Inc. advised England of ■this. England completed his investigation and obtained from Roy Harvey a fair estimate on repairing the plane. He reported to McKamey, who authorized England to let Harvey make the repairs and present a bill to him so that he could obtain a draft from the Insurers to pay for the repairs. McKamey reported to Peter J. McBreen and Associates that coverage was in order and payment should be made.
When Harvey presented his bill he was not paid. It appeared that subsequent to McKamey’s report, McBreen directed him to deny coverage on the basis that the insurance was effective only for pilots who had a minimum of 300 flying hours, where,as Captain Bradshaw only had 1S9, and because the planes were not being used for '“limited commercial” purposes. Although no restriction was pointed out to the insured by Peter J. McBreen, or by Mc-Kamey, they nevertheless refused to pay the loss.
Peter J. McBreen and Associates and McKamey filed a third party petition against Mid-Continent Underwriters, Inc. and Mid-Continent, Beasley and Tri-State General Agency, Inc. filed third party petitions against McBreen, McKamey and Lewis and Other Underwriters. The third party petition of Mid-Continent against Mc-Breen, McKamey and Lewis was dismissed by the Court. McBreen and Associates and McKamey filed their answer and a third party petition against Mid-Continent; Beasley filed an exception of vagueness to the general allegations of fraud and misrepresentations; Roy filed an answer and a third party petition against Beasley, TriState General Agency and Mid-Continent; Mid-Continent filed an answer and a third party petition against those undesignated Underwriters at Lloyd’s of London insuring petitioner’s planes, Beasley, McKamey, Mc-Breen and Associates and Tri-State General Agency; Beasley and Tri-State General Agency ultimately answered and filed third party petitions against Owen John Lewis and the other Underwriters at Lloyd’s of London insuring plaintiff’s planes, Mid-Continent, McKamey and McBreen and Associates.
Two principal questions are presented for determination on the appeal: First, was Falcon an insured under a contract of insurance covering the damaged aircraft, and if yea, what party or parties were obligated to Falcon? Second, if such insurance was not effected, what party or parties can be held responsible for damages to Falcon due to failure to obtain such coverage ?
The insurance sought by Falcon is known in the trade as "surplus line” insurance which is recognized as fully valid and enforceable, but must be procured through a surplus line broker. The Louisiana Insurance Code, LSA-R.S. 22:1251-1270 inclusive, deals with the subject of “unauthorized insurance” and establishes the method by which such insurance is to be secured, and provides for the licensing of brokers authorized to handle such insurance and the manner in which they must conduct their business. There is placed upon the broker the responsibility of keeping certain designated records, filing specified reports with the Commissioner of Insurance and the payment of certain taxes on the insurance so written. In addition to these responsibil *406 ities, the licensed broker is charged under Section 1262 with the following duty:
“A surplus line broker shall not knowingly place surplus line insurance with insurers unsound financially. The broker shall ascertain the financial condition of the unauthorized insurer before placing insurance therewith. The broker shall not so insure with any stock insurer having capital and surplus amounting to less than six hundred fifty thousand dollars, or with any other type of insurer having surplus of less than six hundred fifty thousand dollars unless there is on file with the commissioner of insurance a copy of a trust agreement certified to by the trustee, evidencing a subsisting trust deposit of not less than five hundred thousand dollars with a bank or trust company in the United States and which deposit is held for the protection of United States policyholders.
“In addition to any other statements or reports required by this Chapter, the commissioner of insurance may request from any licensee full and complete information respecting the financial stability, reputation and integrity of any unauthorized insurer with whom any such licensee has dealt, or proposes to deal, in the transaction of insurance business. The licensee shall promptly furnish in written or printed form so much of the information requested as he can produce. The commissioner of insurance, if he believes it to be in the public interest, may order such licensee in writing to place no further insurance business on Louisiana risks through such unauthorized company. As amended Acts 1960, No. 148, § 1.”
[LSA-R.S. 22:1262]
Counsel for Mid-Continent has described the method in which surplus line coverage is handled with Underwriters at Lloyd’s of London:
For such surplus line coverage one goes to a local surplus line broker. Mid-Continent Underwriters, Inc. is such a surplus line broker. The surplus line broker gets “placing information” regarding the insurance risk which cannot be insured with an authorized company, and contacts another broker who represents surplus line companies. In the instant case J. H. Minet and: Company, was the London broker who represented the Underwriters at Lloyd’s of London who insured plaintiff’s planes.. After getting the information on the risk, this broker obtains information from the surplus line companies on how much such, insurance will cost. If the individual desiring the insurance agrees on the premium, he tells the local broker who cables the Underwriters’ broker requesting the risk to be bound. The binding of the risk is confirmed by a cable back from the London broker, Lloyd’s of London is not a company but is a group of individuals subscribing certain portions of their income to certain syndicates. The .risk is insured when the cable is-received from the London broker binding the risk. This does not mean that the insured has a “policy” but he does have a “contract” of insurance. This is similar to a binder which can be issued by a local agent binding a risk even before the “policy” is issued. Subsequently, the local surplus line broker issues its “certificate” to give something to the insured which is evidence of the contract of insurance. This “certificate” is sometimes called a “cover note” or “binder.” It reflects certain coverages having been placed, * * * but is not a policy. The certificate expressly states it is not a “policy.” Attached to this is a form which often uses the word “policy” but which is not a policy but is a form outlining the conditions of coverage under the contract of insurance.
A “policy” as such is ultimately issued taking months to get to the insured. The geographical distance between the insured and the Underwriters at Lloyd’s of London and the complexity of the Lloyd’s syndicate system contribute, among other things, to the delay in the issuance of the actual “policy”. However, the insured has insurance and the Insurers can be determined at *407 all times either by looking on the certificate ■or by calling the surplus line broker who will have the names of the insurers (and also financial statements) on them at his office. The conditions of the contract of insurance are known by the form which is attached to the certificate. Further, in the ■event of a refusal to pay in accordance with Ihe contract the Certificate gives directions •on how to sue. The local broker gets nothing more than a commission on the premium. The premium, less commission, goes to •the London broker and it in turn to the Lloyd’s syndicates on the risk. The Underwriters may deny coverage under a provision of the contract but the Certificate gives directions on how to sue the Insurers. Suit is filed against “undesignated Underwriters at Lloyd’s of London subscribing to Certificate No. xxxx.” Thereafter, counsel representing Underwriters at Lloyd’s of London moves to substitute the leading Underwriter on the insurance (in this case Owen John Lewis) so a named, designated party will be party-defendant and, if unsuccessful, stand in judgment.
The certificate issued to Falcon Flying Services, Inc. has the caption or title:
CERTIFICATE NO. 23269 OF INSURANCE EFFECTED THROUGH MID-CONTINENT UNDERWRITERS, INC.
Attached to the certificate is a form designated Aviation 16, approved by Lloyd’s Underwriters at London, the attachment is made a part of the certificate and discloses the property insured, the limits of liability, period of the policy, the conditions and other declarations. It provides that the purposes for which the aircraft is to be used are “limited commercial” which is further described to include for business and pleasure, and industrial aid, including the carrying of passengers and freight for hire or reward, but excluding any form of instruction or rental to others. Elsewhere therein are listed exclusions or uses and conditions under which the policy has no application. A thorough examination of the certificate or contract for insurance fails to disclose any requirement that the contract is conditioned upon pilots having in excess of 300 hours flying time. Mid-Continent appears in the certificate as a broker representing and acting for the Underwriters at London. The certificate expressly states:
* * * * * *
“Subject to the usual printed clauses of the contracts of the Insurers with whom this cover is effected.
“It is expressly understood and agreed by the Assured by accepting this instrument that Mid-Continent Underwriters Inc. is not an insurer hereunder and that Mid-Continent Underwriters, Inc. is not nor shall be in' any way or to any extent liable for any loss claim whatever, but the Insurers hereunder are those insurers stated 'in this Certificate.
“This contract is registered and delivered as a surplus line coverage under the insurance code of the State of Louisiana-enacted in nineteen hundred and forty-eight. (This clause applicable to Louisiana Risks only).” * * *
Thus we are impelled to the conclusion that Mid-Continent is not the insurer under the contract but the party liable and responsible designated member or members of the syndicate known as Underwriters at London, that according to the terms of the certificate agreed:
“In consideration of the stipulations contained herein, the several Insurers as listed and as appear on the file or to be on file in the Office of Mid-Continent Underwriters, Inc. to which authority' this Certificate specifically refers are hereby severally bound unto: * * * ”
Mid-Continent takes the position that Underwriters at Lloyd’s did in fact cause to be issued an agreement for liability as per copy of the declaration found attached to the certificate and that the representatives of Underwriters at Lloyd’s of London- *408 as designated by them may be cast in judgment.
The record reveals that the answers of McKamey, McBreen and Associates and Owen John Lewis, a representative of Underwriters at Lloyd’s of London who were made respondents in the third party petition of Cody C. Beasley, allege that at the time of the accident the damaged plane was periodically rented out to others and therefore not of “Limited Commercial” use; and further aver that Preston H. Bradshaw, the pilot of the plane at the time of the accident did not have a minimum of 300 hours of flying time. As pointed out above, the certificate and contract for insurance issued to Falcon contained no requirement that the pilot must have a minimum of 300 hours of flying time, and was not a condition as to liability, insofar as Falcon is concerned. The averment that the plane was not being used for “Limited Commercial” purposes but was on rental is not supported by any evidence. We find the contract of insurance was in force and effect against the Underwriters designated in the contract for insurance.
It is unfortunate, it seems to us, that Owen John Lewis, who had appeared and indicated his willingness to become a party defendant to plaintiff’s action in lieu of all Underwriters should have been dismissed from the proceedings. The record discloses that McKamey and McBreen and Associates as agents for a disclosed principal were acting for and on behalf of the insurers, and, therefore, may not be held responsible for the liability incurred. Our holding further requires that plaintiff’s demands be dismissed against Raymond Roy, Cody C. Beasley and Tri-State General Agency, Inc., who acted solely in the capacity of a broker. Incidentally Tri-State was never named a party defendant by plaintiff. Those who acted in obtaining the insurance for and on behalf of Falcon under the established facts cannot be held in damages, whether ex contractu or ex delicto. The same finding is likewise ap-phcable to Mid-Continent, who simply acted' as a broker in procuring the surplus line insurance.
It therefore follows, from the reasons hereinabove stated, that the judgment as-rendered against the defendants must be-reversed and plaintiff’s demands against Raymond Roy, Tri-State General Agency,, Inc. and Mid-Continent Underwriters, Inc. will be dismissed as of nonsuit and without prejudice, and it is further ordered that the rights of Falcon Flying Service, Inc. be reserved as against Owen John Lewis and certain other Underwriters at Lloyd’s of London.
The plaintiff-appellee is herein cast with the costs of this suit.